**IN THE UNITED STATES DISTRICT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**MARGARET CRIMM**                                        **PLAINTIFF**

**VERSUS**                          **CIVIL ACTION NO. 3:12-CV-312-TSL-MTP**

**CAROLYN W. COLVIN[1],
ACTING COMMISSIONER OF                          DEFENDANT
SOCIAL SECURITY ADMINISTRATION**

**REPORT AND RECOMMENDATION**

Plaintiff, Margaret Crimm, filed a Complaint (ECF No. 1) on May 4, 2012,

for judicial review of the Defendant, the Commissioner of Social Security's

("Commissioner") denial of Claimant's application for disability benefits under the

Social Security Act.  Before the Court is the Claimant's Motion for Summary

Judgment (ECF No. 7) filed on November 26, 2012, Government's Motion to

Affirm the Decision of the Commissioner (ECF No. 9) filed on December 23,

2012, and the Claimant's Rebuttal Brief (ECF No. 11) filed on January 4, 2013.

Plaintiff was born on August 24, 1954, she was fifty-six years old at the

time of the ALJ's decision.  ( ECF. No. 6-1, p. 129).  She has a tenth grade

---

[1]Michael Astrue was the Commissioner of Social Security Administration at the time the
Plaintiff filed this case but no longer holds that position.  Carolyn W. Colvin is the Acting
Commissioner of the Social Security Administration and is automatically substituted as
Defendant.  *See* Fed. R.Civ.P. 25(d).

education.  (ECF No. 6-1, p. 50).  Her previous employment included positions as a cashier, sewing machine operator, and store manager.  *Id*.  Plaintiff asserts she was disabled since January 31, 2009.  She further contends that due to arthritis, high blood pressure, depression, and peripheral artery disease, she has not been engaged in any substantial gainful activity since that date.  (ECF No. 6-1, p. 169).

Plaintiff alleges she currently suffers from many physical impairments including chronic back pain, peripheral vascular disease, dyslipidemia, anxiety, depression, gastric reflux, and hypertension.  (ECF 6-1, pp. 448, 501). Plaintiff also alleges she suffers from obesity, median neuropathy of the wrists and arthropathy of the feet.  (ECF No. 6-1, p. 477).

During her initial hearing,, the ALJ found that the Plaintiff had severe impairments of hypertension, obesity, peripheral artery disease, osteoarthritis of the back, hip, and knees, mood disorder and depression.  (ECF No. 6-1, p. 14).  The ALJ considered her full medical record and daily activities including shopping, talking on the phone, playing on the computer and the handling of her finances in his determination.  (ECF No. 6-1, pp. 37-40).  The ALJ opined that the Plaintiff can participate in occasional climbing, could understand and carry out instructions and could maintain attention and concentrate adequately for a two-hour period within eight-hour work day to complete normal workweek without excessive

2

interruptions.  (ECF No. 6-1, p. 55).  Furthermore, the ALJ determined the Plaintiff

can interact with coworkers and supervisors on a limited basis, adapt to a work

setting and ultimately concluded that the Plaintiff retained the residual functional

capacity (RFC) to perform medium work with limitations and can complete a

normal workweek without excessive interruptions.  *Id*.  The ALJ relied on

testimony of a vocational expert (VE) and found that the Plaintiff had the capacity

to perform all of her past relevant work along with a number of jobs in the national

economy.  (ECF No. 6-1, p. 24).  Accordingly, the ALJ concluded that the Plaintiff

was not disabled.   (ECF No. 6-1, p. 24-25).

Plaintiff testified that she was treated by Dr. John Witcher and is currently

seen by Dr. Frenz of the Sebastopol Clinic.  (ECF No. 6-1, p. 42-43).  On August

3, 2009, after reviewing MRI results of the Plaintiff's lumbar spine, Dr. Witcher

opined the results were abnormal and that the abnormalities would significantly

limit the Plaintiff's ability to perform work-related activities.  (ECF No. 6-1, p.

455-459).  Dr. Witcher reported that due to the lumbar spine abnormalities,

Plaintiff had reduced ability to twist and climb stairs, could lift and carry less than

ten pounds; could never stoop, crouch or climb a ladder, and needed the freedom to

shift her positions at will. *Id.*  Dr. Witcher further opined that the Plaintiff could

stand and walk less than two hours in an eight hour workday and be seated less

than two hours in an eight hour workday. *Id.*

Prior to the report issued by Dr. Witcher, Dr. William Lewis, performed a physical evaluation of Plaintiff on May 13, 2009. (ECF No. 6-9, p. 417). Plantiff complained of pain in the back and right hip. *Id.* Dr. Lewis recorded that the Plaintiff was able to flex her hips without difficulty, walk on her heels and toes, and able to flex her back such that her fingertips were within three inches of the floor. *Id.* During the examination, an x-ray was performed on Plaintiff's lumbar spine. After his review of the x-ray, Dr. Lewis reported that the Plaintiff's vertebral bodies were in good position and alignment, the intervertebral disc spaces were well maintained and her hip joints appeared normal. (ECF No. 6-9, p. 419). Following the evaluation, Dr. Lewis diagnosed the Plaintiff with chronic low back pain and chronic bilateral pain. (ECF No. 6-9, p. 420). In addition, Dr. Lewis noted that the Plaintiff had reduced motion of either hip due to pain. *Id.*

On July 27, 2009, Plaintiff had an MRI exam of her lumbar spine by Dr. Phillip Lucas of the Neshoba County General Hospital. (ECF No. 6-1, p. 454). Dr. Lucas reported the MRI revealed small bulges of dessication at L4-5 and L5-S1 and bilateral hypertrophy and stenosis at L4-5, along with normal alignment and normal discs. *Id.*

Dr. Frenz's treatment notes from June 21, 2010, August 25, 2010,

September 1, 2010, September 8, 2010, and September 24, 2010 reflect that the Plaintiff continued to have complaints of pain in her back, right hip and reduced ability of rotation at her hips. (ECF No. 6-1, pp. 519, 525, 531, 535, 540). In addition, Dr. Frenz recorded that Plaintiff's lumbar spine was stable with tenderness and limited range, her cervical spine stable, and her gait and extremities were normal. *Id.*

Plaintiff also complained of depression and anxiety. Plaintiff was referred to a psychologist, Dr. Charles Small. (ECF No. 6-1, p. 412). Dr. Small interviewed the Plaintiff on May 15, 2009, and opined that the Plaintiff has the ability to perform basic functions, possess basic communication skills, can complete routine repetitive tasks and cooperate with others. *Id.* Plaintiff revealed to Dr. Small that she was depressed because of her physical injuries and her inability to financially support herself. (ECF No. 6-1, p. 415). Dr. Small concluded that the Plaintiff's mental state was directly related to her physical ailments. (ECF No. 6-1, p. 416).

On June 3, 2009, Dr. Janise Hinson, the state agency health consultant, met with the Plaintiff and conducted a mental residual functional capacity (RFC) assessment. (ECF No. 6-1, p. 429). Dr. Hinson found that the Plaintiff had an affective disorder which results in moderate difficulties in maintaining social functioning and that the Plaintiff was moderately limited in five out of the twenty

5

areas of functioning with regards to the ability to understand, remember, carry out simple and detailed instructions, maintain attention and concentration for extended times, and to make simple work related decisions.  (ECF No. 6-1, p. 430-440).  Dr. Hinson opined that the Plaintiff can understand and carry out instructions, maintain attention and concentration adequately for two-hour periods within an eight-hour week day.  (ECF No. 6-1, p. 441).  Dr. Hinson concluded the Plaintiff can complete a normal work week without excessive interruptions from psychological symptoms, can interact appropriately with coworkers and supervisors on a limited basis, and can adapt to a work setting.  *Id.*

This Court's review of the Commissioner's decision is limited to whether there is a substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied.  *See* 42 U.S.C. 405(g); *Richardson v. Perales,* 402 U.S. 389 (1971).  Substantial evidence has been defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  The court "may not re-weigh the evidence or substitute our judgement for that of the Commissioner, even if the evidence weighs against the Commissioner's decision."  *Jack v. Astrue*, 426 F. App'x 243, 244-245 (5th Cir. 2005).  Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found

to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F. 2d 614, 617 (5th Cir. 1983).

Plaintiff bears the ultimate burden of proving disability. (42 U.S.C. §§ 423 (d)(5)(A), 1382c(a)(3)(H)(I); 20 C.F.R. § 416.912(a), (c). Plaintiff must provide the relevant medical and other evidence to prove her alleged disability as a result of her impairments.

To be eligible for disability, the Claimant must prove she has an impairment that precludes engaging in an economic activity through the Social Security's sequential process. At step one, Claimant must not be substantially gainfully employed. At step two, she must prove she  has a severe impairment. At step three, her impairment must meet or equal a listed impairment in Appendix 1 of the Regulations. At step four, her impairment must prevent the Claimant from doing past employment.  Finally, at step five her impairment must  prevent the Claimant from doing any other gainful employment. *Newton v. Apfel*, 209 F.3d 443 (5th Cir. 2000)

Plaintiff contends that the ALJ failed to properly consider Dr. Witcher's, evaluation regarding her lumbar spine impairments. The treating physician who is familiar with a claimant's medical condition should generally be accorded considerable weight in determining disability. *Perez v. Barnhart*, 415 F.3d 457,

7

465-66 (5th Cir. 2005).  However, the treating physician's opinion may be

disregarded if there is persuasive contradictory evidence in the record.  *Id*. at 466.

The ALJ, after examining the totality of evidence before it, may reject the opinion

of the treating physician or assign it little weight if there are sound medical

inconsistencies or the report is not supported by evidence.  *Newton*, 209 F.3d 448.

On August 3, 2009, Dr. Witcher opined that Plaintiff's results were

abnormal after viewing the MRI examination of the Plaintiff's lumbar spine.  (ECF

No. 6-1, p. 454).  Dr. Witcher further noted that the abnormalities would

significantly limit the Plaintiff's ability to perform work-related activities.  (ECF

No. 6-1, p. 455-459).  Dr. Witcher opined that the Plaintiff can stand and walk less

than two hours in an eight hour workday and can sit less than two hours in an eight

hour workday.  (ECF No. 6-1, p. 455).  Plaintiff alleges Dr. Witcher's report is

consistent with her complaints of back and hip pain along with while under the

care of Dr. Frenz and Dr. Lewis.  (ECF No. 6-1, pp. 417, 519, 525, 531, 535, 540).

Plaintiff contends that the ALJ failed to provide medical evidence that was

contrary to Dr. Witcher's report on August 3, 2009, and therefore failed to properly

evaluate the medical opinion evidence.  (ECF No. 8-1, p. 8).

Defendant contends Dr. Witcher's opinion was conclusory in that the report

did not list the specificities of the injury or identify how the MRI findings

supported his opinion.  (ECF No. 6-1, p. 456).  In addition, Defendant alleges Dr. Witcher's report was largely founded on the Plaintiff's symptoms rather than quantifiable medical history and that Dr. Witcher's opinion is incongruent with Plaintiff's full medical record.  (ECF No. 6-1, p. 23).  Defendant further asserts that Dr. Witcher's opinion is not supported by Dr. Lewis's MRI examination taken three months earlier that demonstrated Plaintiff was able to flex her hips and her back to nearly touch the floor and her vertebral bodies were aligned.  (ECF No. 6-1, p. 417).  Defendant alleges Dr. Witcher's report is also incongruent with Dr. Lucas' report on July 27, 2009, that Plaintiff's lumber spine is normally aligned.  (ECF No. 6-1, p. 454).  Defendant alleges Dr. Witcher's evaluation contradicts Dr. Frenz's reports from  June 21, 2010, August 25, 2010, September 1, 2010, September 8, 2010, and September 24, 2010, which opine that Plaintiff's gait was normal, her spine was stable and without deformities, she had no reduced level of motion, no loss of motor strength, flexibility in both of her hips, and was able to flex her back and nearly touch the floor.  (ECF No. 6-1, pp. 519, 525, 531, 535, 540).

The Court finds that substantial evidence supports the ALJ's determination that the Plaintiff's allegations of disabling back and hip pain were not entirely credible.  *Perez*, 829 F.2d at 460.  The Court further finds that the ALJ properly

evaluated the Plaintiff's previous and subsequent medical record with regards to Dr. Witcher's report, in that there are inconsistencies and a lack quantitative medical findings to support his report. *Greenspan v. Shala*, 38 F.3d 232, 239 (5th Cir. 1994). Thus, the Court finds the assessment that the Plaintiff could return to her previous occupation is credible (ECF No. 6-1, pp. 21, 24) and the ALJ's decision as to the credibility of claimant's limitations is entitled to considerable deference and it is supported by substantial evidence. *Newton*, 209 F.3d at 459.

Next, Plaintiff contends that the ALJ erred in properly evaluating Dr. Hinson's mental health report. Plaintiff also alleges Dr. Hinson's recommendation is inconsistent in that it fails to account for her moderate social limitations through recommending that she is fit to return to her previous line of work without specifying her limitations. (ECF No. 6-1, p. 441). Furthermore, Plaintiff alleges the ALJ's conclusion that she can adapt to a work setting is incorrect because she is significantly limited in her ability to adjust to changes in the work setting rendering her unable to return to her previous employment positions. (ECF No. 8, pp. 7-9). In addition, Plantiff contends the ALJ did not take the necessary steps and should have made a more detailed assessment of her social functioning impairments. (ECF No. 10, p. 12).

Defendant asserts that Dr. Hinson, the state agency mental health consultant,

conducted a mental RFC assessment in which she opined that Plaintiff was not markedly limited in any area of her ability to socially function.  (ECF No. 6-1, pp. 443-444).  Defendant contends Dr. Hinson concluded that the Plaintiff has moderate limitations in five out of the twenty areas of functioning, including the ability the ability to complete a normal work week without interruptions and the ability to interact appropriately with supervisors, coworkers and the general public. (ECF No. 6-1, p. 444).  Defendants asserts that Dr. Hinson opined Plaintiff can understand and carry out instructions, can maintain attention and concentration adequately for two-hour periods within an eight-hour workday, can complete a normal work week and interact with coworkers and supervisors on a limited basis and is able to adapt to a work setting.  (ECF No. 6-1, p. 445).

Defendant contends Dr. Hinson properly recorded her opinion of Plaintiff's limitations and her ability to perform certain activities.  (ECF No. 6-1, p. 440-441). Furthermore, Defendant alleges the mental RFC "form" in section I, featuring checkboxes, provided limited options, whereas section III of the "form", featured a written explanation to provide a complete assessment of Plaintiff's limitations. (ECF No. 6-1, p. 443-445).  Moreover, Defendant alleges that the Commissioner's Program Operations Manuel System (POMS) states that section I of the mental RFC form "is merely a worksheet" and does not constitute the assessment" but that

11

the doctors' opinions regarding the claimant is in section III of the form.  POMS

DI 24510.60(B)(2); POMS DI 24510.060(B)(4); POMS DI 24510.065(A).  In light

of POMS DI, Defendant contends that section III of the form in which Dr. Hinson

opined Plaintiff can complete a normal work-week without excessive interruptions

is Dr. Hinson's relative assessment.  (ECF No. 6-1, p. 440).

        The ALJ has the right to examine the complete record and medical history of

the Plaintiff to determine if the Plaintiff's condition warrants disability.  *Newton*,

209 F.3d at 457.  When a physician or multiple physicians diagnose a patient with

mild to moderate levels of social impairment, it is not contradictory for the

physician to determine that the individual is capable of returning to their previous

position or working in another field in the national economy.  *Stubbs-Danielson v.*

*Astrue*, F.3d 1169, 1174 (9th Cir. 2008).    Moderate impairments will not render a

claimant disabled.  *Newton*, 209 F.3d at 459.  The issue is not if claimants have

limitations, but if they will retain the ability to perform some tasks; the RFC

determination assumes the existence of limitations and determines that despite

these limitations an individual may still be able to perform a normal work week.

*Herring v. Astrue*, 788 F.Supp.2d. 513, 521 (N.D. Tex. 2011). In this instance, the

ALJ assigned greater weight to Dr. Hinson's detailed report than in her check list.

(6-1, p. 441).  The Court concludes, Dr. Hinson's checklist merely documented

Plaintiff's impairments, while his written explanation provides greater insight into the Plaintiff's possibility to perform certain tasks and ability to return to her previous employment.  *Herring*, 788 F.Supp.2d. at 519.

With regards to the Plaintiff's complaint that the ALJ's opinion was ambiguous, the VE found that with the Plaintiff's social impairments regarding her interaction with coworkers and staff, the Plaintiff could work in two-hour intervals within an eight-hour work day and complete a normal workweek without excessive interruptions.  (6-1, p. 21).   In *Adams v. Astrue*, 340 Fed.Appx. 219, 220 (5th Cir. 2009), the court confirmed an ALJ report denying disability when the claimant required a thirty minute break for every hour standing, stating the individual could still perform a normal work week.  The Court finds that in this instance, the ALJ's conclusion that the Plaintiff can work two hours before requiring a reasonable rest is comparable with the conclusion of that case and she is capable of working a normal work week.  Therefore, the Court finds the VE's assessment that the Plaintiff could return to one or all of her previous occupations is credible  and the ALJ's decision to adopt the VE assessment is entitled to considerable deference, as here, it is supported by substantial evidence.  *Newton*, 209 F.3d at 459.

The Plaintiff contends that the ALJ failed to properly evaluate Plaintiff's severe impairments.  Plaintiff asserts that following the ALJ's report that she has

13

moderate social impairments, the ALJ was required, but failed to conduct a "more detailed assessment" to establish a RFC. (ECF No. 8, p. 11). Furthermore, Plaintiff alleges that without the "more detailed assessment" the ALJ failed to prove the Plaintiff could return to any of her previous professions. (ECF No. 8, p. 13).

The Defendant contends the ALJ performed the necessary evaluation process. Regulations require the ALJ to determine the severity of the claimant's mental impairments at step two and three of the sequential evaluations by rating the degree of functional limitation resulting in four broad functional areas: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), (d), 416.920a(c)(3)(d). When a mental impairment is severe, the ALJ will compare the medical finding about the impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(a)(d)(2).  When a claimant has a severe mental impairment but her limitations do not meet or equal a listed impairment, the ALJ will then assess the claimant's mental RFC. 20 C.F.R. §§ 404.1520a(d)(3), 404.1545, 404.1546(c), 416.920a(d)(3), 416.945, 416.946(c).

The Defendant argues the ALJ's determination of moderate limitations in the

ALJ's findings did not meet or equal a listed impairment.  (ECF No. 6-1, pp. 18-21).  The Defendant contends that the ALJ's detailed assessment took place at steps four and five of the sequential process and is found in the RFC.  (ECF No. 6-1, p. 21).  The Defendant contends the Plaintiff's mental RFC was compiled through Dr. Hinson's and Dr. Small's examinations as well as Plaintiff's statements to determine the Plantiff's moderate limitation in social functioning resulted in a limitation to interact appropriately with supervisors on a limited basis (ECF No. 6-1, pp. 21-24).

The RFC findings must be supported by substantial evidence in the record. *Ripley v. Charter*, 67 F.3d 552, 557 (5th Cir. 1995).  The ALJ has a duty to develop the record before determining the claimant is disabled.  *Id.*  This duty, however, must be balanced against the fact that the claimant's bears the burden of proof up through step four of the evaluation process.  *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).  In *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992), the Court approved a PRT that was based on doctor evaluations and Plaintiff's testimony as being supported by substantial evidence.  In this instance, Defendant conducted a PRT and RFC to properly evaluate Plaintiff's condition. Furthermore, In *Herra v. Commissioner*, 406 Fed.Appx. 899, 905 (5th Cir. 2010), the Court held that a RFC can be compiled from doctor evaluations and Plaintiff's

15

history to evaluate level of impairment.

      The Court finds the ALJ relied on Dr. Hinson's written evaluation, Dr. Small's examination and the Plaintiff's history to conclude with substantial evidence that she could perform her past relevant work as a cashier, sewing machine operator, and retail manager because she can understand and carry out instructions, can maintain attention and concentration adequately for two-hour period within eight-hour work day, can complete normal workweek without excessive interruptions, interact with coworkers and supervisors on a limited basis, and can adapt to a work setting and could therefore.  (ECF No. 6-1, p. 55).

      In conclusion, the Court finds the ALJ used the proper legal standards and that his opinion is supported by substantial evidence.  *Masterson v. Barnhart*, 309 F. 3d 267, 273 (5th Cir. 2002).  Based on the foregoing analysis, the Court recommends that the Plaintiff's appeal be dismissed with prejudice; and the Final Judgment in favor of the Commissioner be entered.

      Pursuant to 28 U.S.C. Sec. 636 (b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are made; the District Court need not

consider frivolous, conclusive or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties.  A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court.  Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the Report and Recommendation that have been accepted by the district court and for which there is no written objection.  *Douglas v. United Services Automobile Association*, 79 F. 3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED this the 8th day of July, 2014

 *s/ John M Roper, Sr.*
UNITED STATES MAGISTRATE JUDGE